AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Northern District of California

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| Michael Lopez | ) | Case No. 16   7 1222 MAG |
| | ) | |
| | ) | SEP 15 2016 |
| | ) | CLERK SUSAN Y. SOONG |
| _Defendant(s)_ | ) | NORTHERN DISTRICT OF COURT |
| | | SAN JOSE CALIFORNIA |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ September 14, 2016 _____ in the county of _____ Santa Clara _____ in the

_____ Northern _____ District of _____ California _____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession of Methamphetamine with Intent to Distribute |
| 21 U.S.C. § 846 | Conspiracy to Distribute Methamphetamine |

This criminal complaint is based on these facts:

See attached affidavit

Approved as to Form
Christoph Vi~
SAUSA Christopher Vieira

☑ Continued on the attached sheet.

_____
_Complainant's signature_

Special Agent George Laffey
_Printed name and title_

Sworn to before me and signed in my presence.

Date: _____ 09/15/2016 _____

_____
_Judge's signature_

City and state: _____ San Jose, California _____

United States Magistrate Judge Howard Lloyd
_Printed name and title_

## AFFIDAVIT OF DEA SPECIAL AGENT GEORGE LAFFEY
## IN SUPPORT OF CRIMINAL COMPLAINT

I, GEORGE J. LAFFEY, being first duly sworn on oath, depose and say:

### I. INTRODUCTION AND PROFESSIONAL BACKGROUND OF AFFIANT

1. I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

2. I am a Drug Enforcement Administration ("DEA") Special Agent currently assigned to the San Jose Resident Office. As a Special Agent with the DEA, my investigations focus on large-scale narcotics offenders. I have been a Special Agent with the DEA since January 24, 2013. I have received 17 weeks of specialized training at the DEA Academy in Quantico, Virginia. This training included several hundred hours of comprehensive, formalized instruction in, but not limited to, basic narcotics investigations, drug identification, detection, and interdiction, familiarization with United States narcotics laws, financial investigations and money laundering, identification and seizure of drug related assets, undercover operations, and electronic and physical surveillance procedures. As a result of my training and experience, I am familiar with how various drugs are used and the typical distribution and trafficking methods used by drug dealers and traffickers. I am also familiar with the various methods generally utilized by traffickers to transport drugs in and through the state of California.

3. I have spoken to, and worked with, more experienced federal, state, and municipal narcotics agents and officers. During the course of my employment as a Special Agent, I have participated in several investigations of illicit drug trafficking organizations. These investigations have involved the use of confidential informants, wire and physical surveillance,

1

and the service of search and arrest warrants. These investigations include the unlawful importation, possession with intent to distribute, and distribution of controlled substances, as well as the related laundering of monetary instruments, the conducting of monetary transactions involving the proceeds of specified unlawful activities, and conspiracies associated with criminal narcotics offenses, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

4. Prior to joining the Drug Enforcement Administration, I was a deputy sheriff with the Mecklenburg County Sheriff's Office for over two years. While employed with the Mecklenburg County Sheriff's Office, I conservatively estimate that I was involved in the arrest of at least one hundred criminal violators of various North Carolina Criminal Code violations, and that on at least fifty occasions I was involved in searches of residences involved in these violations.

5. I have become familiar with the various tools, methods, trends, paraphernalia, and related articles used by traffickers and trafficking organizations in their efforts to import, conceal, manufacture and distribute controlled substances.

6. Furthermore, I have become familiar with the manner in which narcotics traffickers smuggle, transport, store, and distribute narcotics, as well as how they collect and launder drug proceeds. I am also familiar with the manner in which narcotics traffickers use telephones, cellular telephone technology, pagers, coded communications or slang-filled conversations, false or fictitious identities, and other means to facilitate their illegal activities and thwart law enforcement investigations.

7. I have discussed with other more experienced officers and agents various packaging, preparation, method of operation, and security measures which are often employed by narcotics traffickers. I have received training on various methods in which illegal drugs are produced.

8. This Affidavit is made in support of a Complaint against Michael LOPEZ for violations

2

COMPLAINT AFFIDAVIT

of Title 21 U.S.C. §§ 841(a)(1) and 846. As set forth in detail below, there is probable cause to believe that on September 14, 2016, LOPEZ possessed with intent to distribute methamphetamine to an undercover Drug Enforcement Administration (DEA) Task Force Officer and conspired with others to distribute methamphetamine.

9. The information contained in this Affidavit is based upon my training and experience, my personal knowledge of this investigation and information provided to me by other agents and law enforcement officials who have assisted in this investigation and have experience investigating the manufacture, distribution, and sale of controlled substances. This Affidavit is intended to provide probable cause to support the issuance of a complaint and arrest warrant and does not set forth all of the information that I have acquired during the course of this investigation. The Affidavit is limited to the facts relevant and necessary to establish probable cause for the complaint and arrest warrant.

## II.    APPLICABLE LAW

10. Title 21, United States Code § 841(a)(1) provides as follows:

(a) Unlawful acts

Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally -

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance....

11. Title 21, United States Code, Section 846 provides as follows:

Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

3

COMPLAINT AFFIDAVIT

### III.   FACTS SUPPORTING PROBABLE CAUSE TO ARREST

12.   As set forth below, there is probable cause to believe that LOPEZ violated Title 21 United States Code, Sections 841(a)(1) and 846, by possessing with intent to distribute crystal methamphetamine and conspiring with others to distribute controlled substances.

13.   Beginning in or around June 2016, a Source of Information (hereinafter "SOI"), provided information to the DEA on a subject selling crystal methamphetamine in San Jose, California. The SOI stated that the subject's name is "Janeth". "Janeth" was subsequently identified as Janeth VALENCIA-Mendoza a/k/a Yara BANDERAS-Martinez.  The SOI advised the DEA that VALENCIA utilized cellular telephone number 408-630-5245 to conduct narcotics transactions. The SOI advised the DEA that the SOI bought methamphetamine from VALENCIA four times and that the SOI calls VALENCIA about once every two to three weeks to buy a half an ounce of methamphetamine at a time.

14.   In August 2016, TFO Rafael Garcia, acting in an undercover capacity, placed a recorded telephone call to 408-630-5245, believed to be utilized by VALENCIA. Seven days later, TFO Rafael Garcia met with VALENCIA and purchased crystal methamphetamine from VALENCIA.

### A.   August 18, 2016 Undercover Buy/Walk of Four Ounces of Crystal Methamphetamine

15.   On August 11, 2016, I requested the assistance of Task Force Officer (TFO) Rafael Garcia. I wanted TFO Garcia to act in an undercover (UC) capacity and attempt to establish communication with VALENCIA. TFO Garcia was to call VALENCIA, at phone number 408-630-5245, and attempt to set up a narcotics purchase which would take place at a later time. TFO Garcia is a certified Spanish speaker with the Monterey County Sheriff's Office.  All calls

4

were consensual and digitally recorded. The following is a synopsis of the phone conversations and meet and TFO Garcia and VALENCIA participated in.

16. At approximately 4:18 p.m., TFO Garcia called VALENCIA at phone number 408-630-5245. When VALENCIA answered the phone call, TFO Garcia asked to speak to "Janeth." VALENCIA told TFO Garcia to wait a second and placed TFO Garcia on hold. VALENCIA didn't return to the line and TFO Garcia disconnected the call approximately two minutes later.

17. TFO Garcia proceeded to immediately call VALENCIA back at the same phone number, 408-630-5245, and the time was approximately 4:20 p.m. VALENCIA did not answer the phone call.

18. At approximately 4:21 p.m., VALENCIA called TFO Garcia from phone number 408-630-5245. TFO Garcia introduced himself and told VALENCIA that TFO Garcia was referred to her. VALENCIA asked who referred TFO Garcia. TFO Garcia told VALENCIA that TFO Garcia was referred by a friend named "Juan." TFO Garcia said he knew "Juan" from jail. VALENCIA then said, "ok, Juan, mmmm hmmm." TFO Garcia said he was told VALENCIA could help him "agarar unas cosas" (get some stuff).[1] TFO Garcia asked if he could meet with VALENCIA to not talk over the phone. VALENCIA said yes and asked where TFO Garcia would like to meet her. TFO Garcia told VALENCIA that he couldn't meet that day because he had to drive out to Monterey County to meet with his probation officer. TFO Garcia told VALENCIA that he would call her at a later time. VALENCIA said that was fine.

---

[1] When TFO Garcia told VALENCIA that he was looking to "agarar unas cosas" (get some stuff), TFO Garcia was talking in code like narcotic traffickers do in an attempt to avoid law enforcement. VALENCIA never asked TFO Garcia what kind of stuff he was looking for. This led me to believe VALENCIA understood what TFO Garcia was trying to say.

COMPLAINT AFFIDAVIT

19.    On August 12, 2016, at approximately 6:48 p.m., VALENCIA sent TFO Garcia the following text message from phone number 408-630-5245: "Todo vien" (everything okay).

20.    On August 13, 2016, at approximately 8:45 p.m., TFO Garcia replied to VALENCIA's text message: "Tuve problemias pero ya arregle todo. Le marco entre semana para ponermos de acuerdo. Descanso el jueves" (I had some problems, but I fixed everything. I'll call you during the week so we can get together. I'm off on Thursdays).

21.    At approximately 8:51 p.m., VALENCIA replied: "ok."

22.    On August 16, 2016, at approximately 8:38 a.m., VALENCIA sent TFO Garcia the following text message: "Oiga usted no ablando con juan" (hey, have you talked to juan).

23.    At approximately 9:36 a.m., TFO Garcia replied, "Finese q no. Este # es Nuevo. Le iva a pregunar, en cuanto me suelta 2 de las chicas" (he has not, this is a new number. I was going to ask you, how much can I get 2 of the small ones for).[2]

24.    At approximately 9:44 a.m., VALENCIA replied, "Oiga usted vive ahi en sanjose" (hey, do you live in San Jose).

25.    At approximately 9:44 a.m., VALENCIA sent another text message which was just a question mark symbol – "?".

26.    At approximately 9:56 a.m., TFO Garcia replied to VALENCIA's question, "No. Para el rumbo de Salinas" (no, in the Salinas area).

27.    At approximately 10:06 a.m., VALENCIA asked, "pero usted bendria para ca?" (but you would come down)?

28.    At approximately 10:33 a.m., VALENCIA again sent a text message that only included

---

[2] When TFO Garcia asked about the 2 "small ones," he was talking in code referring to 2 ounces of methamphetamine.

6

COMPLAINT AFFIDAVIT

a question mark symbol – "?".

29.    At approximately 10:41 a.m., TFO Garcia told VALENCIA, "Claro q si." (yes, of course).

30.    At approximately 10:41 a.m., TFO Garcia sent VALENCIA another text message, "Ando trabajando por eso duro en responder" (I'm working, that's why it takes me a while to reply).

31.    At approximately 10:41 a.m., VALENCIA replied, "Mire si agarra 4 selas dejo apeso" (look if you get 4, i'll let you have them for 1).[3]

32.    At approximately 11:38 a.m., VALENCIA sent TFO Garcia another text message, "Si entendio mi msg?" (did you understand my message).

33.    At approximately 11:38 a.m., TFO Garcia replied, "Ya esta. La veo el jueves" (it's done. I'll see you on Thursday).

34.    At approximately 11:38 a.m., TFO Garcia sent VALENCIA the following text, "Si. Todo bien. sali a lonche" (yes, everything is okay. I'm out to lunch).

35.    At approximately 11:40 a.m., VALENCIA replied, "Ok como ake hrs?" (ok, at about what time).

36.    At approximately 11:44 a.m., TFO Garcia replied, "Como a las 2, como ve" (at about 2, how does that sound).

37.    At approximately 11:45 a.m., VALENCIA said, "Perfecto" (perfect).

38.    On August 17, 2016, at approximately 3:14 p.m., VALENCIA sent TFO Garcia the following text message, "Yano vino verda?" (you're not coming right).

---

[3] Based on my training and experience, VALENCIA is quoting TFO Garcia 4 ounces of methamphetamine for $1,000.

7

39.   At approximately 5:45 p.m., TFO Garcia replied, "Hoyga, perdon apenas sali y vi el telefono. Le habia dicho q manana" (Sorry, I just got out and saw my phone. I told you tomorrow).

40.   At approximately 5:45 p.m., TFO Garcia sent VALENCIA another text message, "Si va estar disponible" (are you going to be available).

41.   At approximately 5:45 p.m., TFO Garcia told VALENCIA, "Dispense si la confundi. La veo manana como a la hora q habiamos quedado" (sorry if I confused you. I'll see you tomorrow at the same time).

42.   At approximately 5:48 p.m., VALENCIA replied, "Ok ntp" (ok, don't worry about it).

43.   On August 18, 2016, at approximately 1:00 p.m., I held a briefing that TFO Garcia and other members of the DEA San Jose Office attended.  The briefing was for a buy/walk operation of 4 ounces (one quarter pound) of methamphetamine by TFO Garcia from VALENCIA. TFO Garcia would be utilizing $1,000 of Official Advanced Funds (OAF) that I gave him. It should be noted TFO Garcia was equipped with an electronic monitoring device throughout the operation.

44.   At approximately 1:50 p.m., TFO Garcia drove his undercover police vehicle to a pre-determined meeting location and met with SA Nick Perkins, TFA Fernando Viera, and myself. TFA Viera, SA Perkins, and I searched/inspected TFO Garcia's undercover vehicle prior to the commencement of the operation.

45.   At approximately 1:55 p.m., TFO Garcia called VALENCIA at phone number 408-630-5245. TFO Garcia greeted VALENCIA and told her that he was in the area. VALENCIA told TFO Garcia that she was on Almaden Blvd. in San Jose, near the shopping

COMPLAINT AFFIDAVIT

center and Chase Bank. TFO Garcia asked to meet VALENCIA in the Mall shopping center, behind Sears, located at 5540 Winfield Blvd. VALENCIA agreed and the call terminated.

46. On August 18, 2016, at approximately 1:58 p.m., VALENCIA sent TFO Garcia the following text message, "Cuantas muchachas va akerer?" (how many girls are you going to want).[4]

47. At approximately 2:01 p.m., TFO Garcia replied, "Las 4" (the 4).

48. At approximately 2:03 p.m., VALENCIA told TFO Garcia, "ok."

49. At approximately 2:07 p.m., TFO Garcia drove his undercover vehicle to the northwest corner of the Westfield Oakridge Mall parking lot located at 925 Blossom Hill Road, San Jose, CA. TFO Garcia parked in the parking lot facing westbound.

50. At approximately 2:13 p.m., TFO Garcia sent VALENCIA a text message, "La espero atra de la sears" (I'll wait for you behind sears).

51. At approximately 2:13 p.m., TFO Garcia told VALENCIA, "Ya estoy aqui" (I am here).

52. At approximately 2:14 p.m., VALENCIA replied, "Ok ahi yego" (ok, i'll be there).

53. At approximately 2:30 p.m., VALENCIA called TFO Garcia from phone number 408-630-5245. VALENCIA called to inquire on TFO Garcia's exact location. TFO Garcia gave VALENCIA driving directions to the rear of the Sears parking lot where TFO Garcia was located. VALENCIA acknowledged and said she would arrive shortly.

---

[4] Based on my training and experience, I know that "muchachas" is a code word used to refer to narcotics, such as methamphetamine. Based on TFO Garcia's previous conversations, I know that VALENCIA was asking TFO Garcia how many ounces of methamphetamine TFO Garcia was looking to purchase.

9

COMPLAINT AFFIDAVIT

54.   At approximately 2:37 p.m., TFO Garcia called VALENCIA at phone number 408-630-5245. VALENCIA answered the call and immediately said she was in the area and didn't see TFO Garcia. TFO Garcia proceeded to exit his vehicle and gave the vehicle description to VALENCIA. VALENCIA proceeded to pull up in a silver Toyota Scion bearing California license 7PDP804. VALENCIA parked next to TFO Garcia. TFO Garcia walked around the back of TFO Garcia's vehicle and made contact with VALENCIA through the front passenger side door of VALENCIA's vehicle.

55.   As soon as TFO Garcia opened the front passenger door of VALENCIA's vehicle, VALENCIA reached to the rear passenger side floorboard, retrieved a clear plastic bag, and gave it to TFO Garcia. The clear bag contained a small piece of a tamale, tamale wrapper, and a piece of foil paper. TFO Garcia opened the clear bag and looked inside the foil paper and noticed it contained a small clear plastic bag with a crystalline substance. TFO Garcia recognized the substance to be methamphetamine.  TFO Garcia paid VALENCIA $1,000 of Official Advanced Funds (OAF) in exchange for the methamphetamine.

56.   TFO Garcia asked how much it would cost to purchase one pound of methamphetamine from VALENCIA. VALENCIA said she rarely sold pound quantities and preferred to sell kilograms. VALENCIA quoted TFO Garcia one kilogram of methamphetamine for $6,600. TFO Garcia said that was a fair price and that he would return at a later time. The meeting was terminated at this time.

57.   Task Force Officer Jeff Tacazon followed VALENCIA's silver Toyota Scion out of the mall parking lot. Agents maintained surveillance on the silver Toyota Scion until approximately 2:48 p.m., when it parked at 5654 Hoffman Court, San Jose, CA. Shortly

10

thereafter, Task Force Officer Billy Richmond observed VALENCIA walking to and from the front door of 5654 Hoffman Court, Apartment 2. Surveillance was then terminated.

58.   Following the meet, TFO Garcia met with Special Agent Perkins, Task Force Agent Viera, and me at a pre-determined location.  TFO Garcia transferred custody of the suspected crystal methamphetamine to Special Agent Perkins and me. Special Agent Perkins conducted a field test of the suspected crystal methamphetamine that resulted in a presumptive positive test for the presence of methamphetamine.  The crystal methamphetamine weighed approximately 191.6 gross grams.

**B.   August 30, 2016 Undercover Buy/Walk of a Kilogram of Crystal Methamphetamine**

59.   On August 30, 2016, at approximately 1:57 p.m., Special Agents Erin Holder, RAC Mike Robinson, Task Force Agents Fernando Viera, Mike McCready, and I, and Task Force Officers Jeff Tacazon, Bernardo Lopez, and Shawn Foust established surveillance in the vicinity of the Westfield Oakridge Mall parking lot located at 925 Blossom Hill Road, San Jose, CA.  At this time, SCCSET Officer Short established surveillance on 5654 Hoffman Court, San Jose, CA.

60.   At approximately 2:04 p.m., TFA McCready saw TFO Rafael Garcia arrive in the Westfield Oakridge parking lot in his undercover vehicle and park.

61.   At approximately 2:35 p.m., SCCSET Officer Short saw a silver Acura TL bearing California license 7TMY565 arrive at 5654 Hoffman Court.  SCCSET Officer saw VALENCIA and a black male, subsequently identified as Marlon Lee DAVIS, walk toward 5654 Hoffman Court, Apartment 2.  Shortly thereafter, SCCSET Officer Short saw VALENICA walk from Apartment 2 holding a multi-colored gift bag and DAVIS walk from Apartment 2 holding a black duffel bag.  SCCSET Officer Short saw the silver Acura TL depart Hoffman Court toward

11

Blossom Hill Road.  SCCSET Officers maintained surveillance on the silver Acura TL to the Westfield Oakridge parking lot entrance off of Winfield Boulevard.

62.    At approximately 2:45 p.m., TFA McCready saw the silver Acura TL arrive in the Westfield Oakridge parking lot and park approximately 100 yards from TFO Garcia's vehicle.  TFA McCready observed VALENCIA exit the driver seat of the silver Acura TL empty handed and walk towards TFO Garcia's vehicle.  TFA McCready observed VALENCIA wearing a red tank top and jeans.

63.    At approximately 2:46 p.m., VALENCIA entered the passenger side of TFO Garcia's vehicle.  Shortly thereafter, VALENCIA made a telephone call to DAVIS and directed him to come to TFO Garcia's vehicle.  TFA McCready then saw DAVIS exit the passenger side of the silver Acura TL holding a multi-colored gift bag while walking toward TFO Garcia's vehicle.  This is the same multi-colored gift bag that SCCSET Officer Short saw VALENCIA carrying as she walked from 5654 Hoffman Court, Apartment 2 prior to meeting with TFO Garcia.  TFA McCready saw DAVIS enter the rear driver side of TFO Garcia's vehicle.  At this time, TFA McCready saw TFO Garcia exit his vehicle and then get back into his vehicle.

64.  TFO Garcia opened the multi-colored gift bag that DAVIS delivered to TFO Garcia's vehicle.  TFO Garcia noticed that the gift bag contained a plastic bag with a crystalline substance. TFO Garcia recognized the substance to be methamphetamine.  TFO Garcia paid VALENCIA $6,500 of Official Advanced Funds (OAF) in exchange for the methamphetamine.

65.    At approximately 2:50 p.m., TFA McCready saw DAVIS exit TFO Garcia's vehicle and approximately a minute later, VALENCIA exited the vehicle holding a coffee cup that contained $6,500.  At this time, TFA McCready saw VALENCIA walk to and enter the driver

12

seat of the silver Acura TL and DAVIS enter the passenger seat of the silver Acura TL.  TFA
McCready saw the silver Acura TL depart the area.

66.    At approximately 2:52 p.m., RAC Robinson observed the silver Acura in the drive thru
line at Starbucks located at 967 Blossom Hill Road, San Jose, CA.

67.    At approximately 3:02 p.m., SA Foust observed the silver Acura TL drive from
Starbucks through the Westfield Oakridge Mall parking lot.  SA Foust observed the silver Acura
TL exit the Mall parking lot and park in a parking lot beside Mandarin Gourmet located at 5560
Santa Teresa Blvd, San Jose, CA.  Shortly thereafter, I saw VALENCIA and DAVIS exit the
silver Acura TL and walk toward the entrance of Mandarin Gourmet.  Shortly thereafter, I saw
VALENCIA and DAVIS walk back toward the silver Acura TL and depart the parking lot.

68.    At approximately 3:14 p.m., I saw the silver Acura TL drive back into the Starbucks
parking lot at 967 Blossom Hill Road.  Surveillance was then terminated.

69.    Following the meeting, TFO Garcia transported the suspected crystal
methamphetamine to the DEA San Jose Resident Office.  TFO Garcia then transferred custody
of the suspected crystal methamphetamine to TFO Williams. TFO Williams conducted a field
test of the suspected crystal methamphetamine that resulted in a presumptive positive test for the
presence of methamphetamine.  The suspected crystal methamphetamine weighed approximately
1022.6 gross grams.

### C.    September 14, 2016 Undercover Buy/Bust of Three Kilograms of Crystal Methamphetamine

70.    On September 14, 2016, at approximately 10:00 a.m., TFO Garcia arrived at the
Westfield Oakridge parking lot in his undercover vehicle.  At that time, TFO Garcia, acting in an
undercover capacity, placed a recorded telephone call to (408) 706-1784, utilized by
VALENCIA, coordinating a meet with VALENCIA for the purchase of three kilograms of

13

COMPLAINT AFFIDAVIT

crystal methamphetamine. VALENCIA agreed to meet with TFO Garcia in approximately 40

minutes to supply him with the three kilograms of crystal methamphetamine.

71. At approximately 11:06 a.m., Special Agent Nicholas Perkins observed a silver Toyota

Scion bearing California license 7PDP804 drive into the driveway of 5654 Hoffman Court.

72. At approximately 11:18 a.m., Special Agent Nicholas Perkins observed the

aforementioned silver Scion depart 5654 Hoffman Court.

73. At approximately 11:22 a.m., Special Agent Mike McCready observed the silver Scion

arrive in the Westfield Oakridge parking lot and park by TFO Garcia's undercover vehicle.

Shortly thereafter TFO Garcia walked to the driver side of the silver Scion. TFO Garcia observed

that VALENCIA was driving and an unknown Hispanic male, subsequently identified as

Michael LOPEZ, was sitting in the front passenger seat of the silver Scion. VALENCIA advised

TFO Garcia to get in the vehicle so she could show him the crystal methamphetamine. TFO

Garcia entered the rear driver seat of the silver Scion. VALENCIA told TFO Garcia to shut the

door so she could drive around and show him the crystal methamphetamine. At that time LOPEZ

exited the front passenger seat to allow TFO Garcia to get into the front passenger seat. TFO

Garcia told VALENCIA that his money was in his car and that he could look at the crystal

methamphetamine right there. VALENCIA told TFO Garcia that she wouldn't rip him off.

VALENCIA then told TFO Garcia to grab a gift bag that was located in the rear of the silver

Scion and look at the crystal methamphetamine. TFO Garcia grabbed the gift bag and observed a

pillow inside of the gift bag. TFO Garcia unzipped the pillow and observed several bundles of a

crystalline substance inside of the pillow. Based on TFO Garcia's training and experience, TFO

Garcia recognized the crystalline substance as crystal methamphetamine and gave the bust

14

COMPLAINT AFFIDAVIT

signal. Agents and Officers immediately approached the vehicle and arrested VALENCIA and LOPEZ.

74.   Following the arrests, Agents and Officers executed search warrants at 5654 Hoffman Court, Apartment 2, San Jose, CA and 5650 Hoffman Court, Apartment 2, San Jose, CA. Agents and Officers seized approximately 388.9 gross grams of suspected crystal methamphetamine inside of DAVIS' residence at 5650 Hoffman Court, Apartment 2, San Jose, CA. DAVIS was also located inside of the residence at that time.

75.   Special Agent George Laffey, witnessed by Special Agent Michael Robinson, transported the suspected crystal methamphetamine that was located inside of the silver Scion to the San Jose Resident Office for processing. A presumptive chemical test conducted by Special Agent Laffey utilizing a NIC type "U" test kit yielded a positive result for the presence of methamphetamine. The crystal methamphetamine weighed approximately 3105.9 gross grams.

## IV.   CONCLUSION

76.   Based upon the foregoing evidence, there is probable cause to believe that on September 14, 2016 Michael LOPEZ knowingly possessed methamphetamine with intent to distribute, in violation of Title 21, United States Code, Section 841(a)(1) and conspired with others to sell methamphetamine, in violation of Title 21, United States Code, Section 846. Accordingly, I respectfully request that the court issue a criminal complaint for Michael LOPEZ.

15

COMPLAINT AFFIDAVIT